Date signed July 30, 2014



PAUL MANNES
U. S. BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MARYLAND
## at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| ABDELLA AHMED ABDOSH | : | Case No. 13-29298PM |
| DJUWERIA MOHAMMED ABDULAHI | : | Chapter 13 |
| Debtors | : | |
| ABDELLA AHMED ABDOSH | : | |
| DJUWERIA MOHAMMED ABDULAHI | : | |
| Plaintiffs | : | |
| vs. | : | Adversary No. 14-00190PM |
| INDY MAC MORTGAGE CORP. | : | |
| SUNTRUST BANK, INC. | : | |
| OCWEN LOAN SERVICING, LLC | : | |
| KIMBERLY LANE, ESQUIRE | : | |
| SUNTRUST BANK | : | |
| NANCY SPENCER GRIGSBY, TRUSTEE | : | |
| Defendants | : | |

## MEMORANDUM OF DECISION

This adversary proceeding follows on the heels of this court's decision in the case of *Akwa v. Residential Credit Solutions, Inc. (In re Akwa)*, 2014 WL 3566812 (B.C. Md. 2014), where, as here, the debtor sought to strip down or bifurcate the claim of the secured creditor.  In this bankruptcy case under Chapter 13 filed November 14, 2013, the Debtors' Schedules filed December 12, 2013, valued their residence at $58,000.00 and listed encumbrances held by IndyMac Mortgage Corp. ("IndyMac") securing a debt of $135,000.00 and a junior lien held by

Suntrust Bank ("Suntrust") securing a debt of $11,819.95.[1]  The Defendant, Ocwen Loan Servicing, LLC ("Ocwen"), services the IndyMac debt.  Ocwen and Suntrust filed proofs of claim in the amounts of $137,180.16 and $11,412.28, respectively.

In the complaint filed March 29, 2014, the Plaintiffs sought avoidance of the Suntrust lien in its entirety and reduction of the debt secured by the IndyMac lien to $58,000.00.  Suntrust did not file a response to the complaint.  On July 11, 2014, the court entered a judgment by default as to Suntrust pursuant to the authority of such cases as *In re Millard*, 414 B.R. 73, 76-77 (D. Md. 2009) *aff'd* 404 Fed. Appx. 713 (CA4 2011).  As the district court pointed out in *Millard*:

> A. *The Interplay of 11 U.S.C. §§ 506(a) and 1322(b)(2)*
>
> In *Nobelman*, the Supreme Court analyzed the interplay between claim-bifurcation under § 506(a) and the anti-modification clause of § 1322(b)(2) to determine whether a debtor could bifurcate a single, undersecured residential mortgage claim into secured and unsecured components pursuant to § 506(a).[FN4] *Id*. at 326, 113 S.Ct. 2106. The debtor in Nobelman asserted that § 1322(b)(2)'s anti-modification provision applied only to the secured component, as that term was defined in § 506(a), of her mortgage claim. *Id*.
>
>> [FN4] The debtors in Nobelman had a primary residence valued at $23,500 and a first mortgage claim for $71,335. The debtors' Chapter 13 plan proposed to bifurcate the mortgagee's claim under § 506(a) into a secured claim of $23,500 and an unsecured claim of $47,835. *Nobelman*, 508 U.S. at 326, 113 S.Ct. 2106.
>
> Section 506(a), which applies to Chapter 13 plans pursuant to 11 U.S.C. § 103, states that
>
>> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest is less than the amount of such claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
>
> 11 U.S.C. § 506(a). Thus, under § 506(a), "an allowed claim secured by a lien on the debtor's property is a secured claim to the extent of the value of the property; to the extent the claim exceeds the value of the property, it is an unsecured claim." *Nobelman*, 508 U.S. at 328, 113 S.Ct. 2106. However, § 1322(b)(2), which applies only to Chapter 13 bankruptcy, provides that

---

[1] Schedule D was amended on February 28, 2014.  The amendment did not alter the amount of the claims owed to IndyMac or Suntrust.

> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
> ...
>
> modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence ...
>
> 11 U.S.C. § 1322(b)(2). The *Nobelman* Court concluded that where a creditor's lien is at least partially secured, § 506(a) does not operate to eliminate the creditor's rights in the unsecured component. *Nobelman*, 508 U.S. at 332, 113 S.Ct. 2106; *see Johnson*, 226 B.R. at 366.

*Id*. at 76.

Ocwen filed this Motion to Dismiss Complaint. By virtue of 11 U.S.C. § 1322(b)(2), Ocwen argues that its claim cannot be bifurcated into secured and unsecured components and, on that account, the Complaint must be dismissed. The following sections of the Bankruptcy Code are pertinent to this issue:

> 11 U.S.C. § 506.  Determination of secured status
>
> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim[.]
>
> 11 U.S.C. § 1322.  Contents of plan
>
> (b) Subject to subsections (a) and (c) of this section, the plan may–
>
> > (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims[.]
>
> 11 U.S.C. § 101.  Definitions
>
> (13A) The term "debtor's principal residence"–
>
> > (A) means a residential structure if used as the principal residence by the debtor, including incidental property, without regard to whether that structure is attached to real property; and
> >
> > (B) includes an individual condominium or cooperative unit, a mobile or manufactured home, or trailer if used as the principal residence by the debtor.

>(27B) The term "incidental property" means, with respect to a debtor's principal residence–
>
>>(A) property commonly conveyed with a principal residence in the area where the real property is located;
>>
>>(B) all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, or insurance proceeds; and
>>
>>(C) all replacements or additions

The question presented is whether certain provisions of the Deed of Trust securing Ocwen's principal ensnare other collateral so that the loan is secured by more than the Debtors' principal residence. The court finds that the provisions of the Deed of Trust relied upon by the Debtors do not enable them to the bifurcation sought.

The Debtor relies upon the case of *In re Ennis*, 558 F.3d 343 (CA4 2009), for the proposition that the claim is secured by more than "a security interest in real property that is the debtor's principal residence . . . ." *Ennis* involved a lien secured by a mobile home sitting on leased property. The court pointed out that inasmuch as a mobile home is personal property, the real property requirement of the 11 U.S.C. §1322(b)(2) anti-modification clause was not satisfied and that debtors could modify a claim secured by their mobile home in their plan. Because the mobile home was on leased real estate, it was not necessary to delve into the issue that it had to be so affixed to the ground that it had become real estate. *Ennis* is not germane to this case. While 11 U.S.C. §101(13A)(B) includes mobile homes in the category of principal residences, it does not effect a conversion of personal property to real property.

Likewise, cases decided before the enactment of 11 U.S.C. §§ 101(13A)(B) and 27(B) must be discounted, although such cases as *In re Davis*, 989 F.2d 208, 213 (CA6 1993) looked to the issue as to whether the instrument granted no interest above that inextricably bound to the real property itself.

The provisions of the Deed of Trust securing IndyMac relied upon by the Debtors, namely, paragraphs 2, 3, 5, 11 and the definition section N, all fall within that category. Each of these provisions, in one form or another, generally appear in deeds of trust in use in this area. Section 2 deals with application of payments or proceeds. Nothing dealing with collateral appears in this section. Section 3 deals with escrow payments for taxes, ground rents, community association dues and insurance. Should the borrower fail to make the payments, the lender may make these on the borrower's behalf. Paragraph 5 contains the provisions requiring the

maintenance of insurance; failing such, the lender could place insurance to protect its interest in the property.  The provision also covers use of insurance proceeds in the event of loss.  Finally, paragraph 11 of the Deed of Trust governs the use of proceeds paid by a third party, such as insurance proceeds or condemnation proceeds.  Once again, no additional collateral is created, as such, payments are in substitution of the original damaged or appropriated collateral.

These items are incidental property commonly conveyed in a deed of trust and defined in 11 U.S.C. §§ 101(13)(A) and (27)(B) as a part of a debtor's principal residence.  Congress added these sections to the Bankruptcy Code in 2005 so as to clarify any ambiguity some judges may have found in 11 U.S.C. §1322(b)(2).  Since its enactment, courts have recognized this in such cases as *In re Shull*, 493 B.R. 453 (BC M.D. Pa. 2013)(fixtures); *In re Kreitzer*, 489 B.R. 698 (B.C. S.D. Ohio 2013)(miscellaneous proceeds); *In re Inglis*, 481 B.R. 480 (BC S.D. Ind. 2012) (escrow); *In re Leiferman*, 2011 WL 166170 (B.C. S.D. 2011)(Miscellaneous proceeds).

The Debtors' reliance upon the case of *In re Bradsher*, 427 B.R. 386 (M.D. N.C. 2010), is misplaced.  Even if the court were to find that the Deed of Trust included the escrow as collateral, which it does not, the statute is clear that insurance proceeds and escrows are part and parcel of the Debtors' principal residence.  *See also*, In re Mullins, 2012 WL 2576625 (M.D. N.C. 2012).  As Judge Stocks, the author of the *Bradsher* opinion points out, in his opinion in *Mullins,* "[t]his provision simply directs how payments are to be applied as they are received and does not serve to create a security interest."  Items such as insurance proceeds and condemnation proceeds are not additional collateral but replacements for the condemned property or funds for the cost of repairs.

The Debtors' reliance upon *In re Hammond,* 27 F.3d 52, 56 (CA3 1994) is likewise misplaced as the security interest in that case included furniture and provided additional collateral.  Similarly *Hammond* was decided long before the amendments made by the 2005 amendments adding §101(13A) and (27B).  As the House Report explains:

> Section 306(c)(2) amends section 101 of the Bankruptcy Code to define the term "incidental property" as property commonly conveyed with a principal residence in the area where the real property is located. The term includes all easements, rights, appurtenances, fixtures, rents, royalties, mineral rights, oil or gas rights or profits, water rights, escrow funds, and insurance proceeds. Further, the term encompasses all replacements and additions.

H.R. Rep. 109-31, Pt. 1, at 72, 109th Cong., 1st Sess. (2005).

The Motion to Dismiss Complaint will be granted. An appropriate order will be entered.

cc: Plaintiffs
Plaintiffs' Counsel
Defendant IndyMac Mortgage Corp.
Defendant Suntrust
Defendant Ocwen Loan Servicing, LLC
Defendant Ocwen Loan Servicing, LLC's Counsel
Defendant Kimberly Lane
Defendant Nancy Spencer Grigsby, Trustee

**End of Memorandum of Decision**